

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-6-2004

# Bader v. RHI Refractories

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4486

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Bader v. RHI Refractories" (2004). *2004 Decisions.* Paper 253.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/253

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 01-4486

———————

GARY BADER,
Appellant

v.

RHI REFRACTORIES AMERICA, INC,
Successor to Global Industrial Technologies, Inc;
GLOBAL IND TECH INC, Employee Severance Pay Plan;
STEVEN B. SPOLAR, Plan Administrator for the
Global Industrial Technologies Inc. Employee Severance Pay Plan

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 01-cv-00346)
District Judge:  Honorable Robert J. Cindrich

———————

Submitted Under Third Circuit LAR 34.1(a)
October 1, 2004

Before:  RENDELL, FUENTES and SMITH <u>Circuit</u> <u>Judges</u>.

(Filed                    )

———————

OPINION OF THE COURT

———————

RENDELL, <u>Circuit Judge</u>.

Appellant Gary Bader ("Bader") seeks reversal of the District Court's grant of

summary judgment for Defendants RHI Refractories America, Inc., Global Industrial Technologies., Inc. Employee Severance Pay Plan, and Steven B. Polar (collectively referred to as "RHI"), based on the Court's determination that the decision of the Plan Administrator ("Administrator") to deny the appellant benefits under the Global Industrial Technologies, Inc. Employee Severance Pay Plan ("Plan") was supported by substantial evidence and affirmed under the "heightened" arbitrary and capricious standard of review. As Bader's claim for recovery of benefits under the Plan rests on the rights provided by ERISA, the District Court had jurisdiction under 29 U.S.C. § 1132(e). We have jurisdiction under 28 U.S.C. § 1291. We will affirm.

I.

As we write solely for the parties, our recitation of the facts will be limited to those necessary to our determination. Bader appeals the District Court's judgment, contending that the Court erred in adopting the Magistrate Judge's Report and Recommendation ("Magistrate's Report") which Bader claims improperly applied an overly deferential standard in reviewing the Plan Administrator's decision. Consequently, Bader argues that the Court erred in adopting the Magistrate's Report as the basis for granting summary judgment to the Defendants, alleging that the Court lacked relevant material facts on the record to support affirming the denial of Bader's claim for benefits.

The Administrator concluded that Bader's resignation from RHI did not qualify as a voluntary termination for "Good Reason" and, therefore, Bader was not entitled to

2

receive enhanced severance benefits under the terms of the Plan. The District Court's summary judgment ruling was based on its determination that the Administrator's decision, denying Bader's application for benefits, was supported by sufficient facts in the record.

II.

We exercise plenary review of the District Court's grant of summary judgment and we apply the same standard that the lower court should have applied. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

*A.     Appropriateness of the Arbitrary and Capricious Standard*

Before we can evaluate the propriety of the Administrator's determination, we must first decide whether the District Court's application of the deferential "arbitrary and capricious" standard of review was proper. The Supreme Court has directed us to review the determinations of a plan administrator *de novo*, unless the "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In that event, the arbitrary and capricious standard is to be applied in reviewing

3

the decisions of the plan's administrator.  Id.; see also Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., 222 F.3d 123, 129 (3d Cir. 2000).

In the present case, it is undisputed that the Plan grants the Administrator discretion to construe its terms and determine the eligibility for benefits.[1]  Therefore, as the Magistrate's Report noted, the Administrator's decision is properly reviewed under an arbitrary and capricious standard.

*B.      Conflict of Interest: Applying Heightened Standard of Review*

Our consideration of the proper standard of review does not end here.  The Supreme Court has instructed that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"  Firestone Tire & Rubber Co., 489 U.S. at 115.

In addition to determining eligibility for benefits, RHI also pays benefits disbursed

---

[1]      Section 5.1 of the Plan provides that:
The Plan shall be administered by the Company . . . [which] shall have the sole and absolute discretion to interpret where necessary all provisions of the Plan, . . . to determine the rights and status under the Plan of employees or of other persons, to resolve questions or disputes arising under the Plan, and to make any determinations with respect to the benefits payable hereunder and the persons entitled thereto as may be necessary for purposes of the plan.
App. at 9a.

4

through the Plan out of its own funds.[2]  This creates an inherent conflict of interest for RHI as the Administrator of the Plan.[3]  See Skretvedt v. E.I. DuPont de Nemours & Co., 268 F.3d 167, 174 (3d Cir. 2001).  Where such a conflict exists, the arbitrary and capricious standard is not abandoned, but "heightened" scrutiny is applied to a plan administrator's decision.  Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377, 393 (3d Cir. 2000); see also Firestone Tire & Rubber Co., 489 U.S. at 115.  This "heightened arbitrary and capricious review" standard remains "deferential, but not absolutely deferential" to the decisions of a plan administrator.  Pinto, 214 F.3d at 393.

The appropriate level of review that is given to an administrator's decision is determined by a "sliding scale method, intensifying the degree of scrutiny to match the degree of the conflict."  Id. at 379.  The degree of deference applied will be lessened accordingly to "neutralize any untoward influence resulting from the conflict."  Id. at 391 (quoting Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80, 87 (4th Cir. 1993)).

As noted in the Magistrate's Report, a conflict of interest clearly existed as a result of RHI's role as both administrator and funder of the Plan.  A ruling by the Administrator in Bader's favor would cost RHI $156,666 under the Plan's provisions.  The magnitude

---

[2]     Section 7.4 of the Plan expressly states that the Plan is not funded and benefits under the Plan are paid by RHI from its general assets.

[3]     Because direct evidence demonstrating that a plan administrator's decision was actually influenced by the presence of a conflict of interest is rare, the absence of such direct evidence is not determinative that no conflict exists.  See  Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377, 379 (3d Cir. 2000).

of this conflict, however, is lessened by the fact that RHI, as the employer, had "incentives to avoid the loss of morale and higher wage demands that could result from denials of benefits" that at least partially counter any incentive not to pay legitimate claims. Nazay v. Miller, 949 F.2d 1323, 1335 (3d Cir. 1991); see also Kosiba v. Merck & Co., No. 02-2668, 2003 WL 2029942, at *8 (3d Cir. Sept. 13, 2004), Smathers v. Multi-Tool, Inc., 298 F.3d 191, 197 (3d Cir. 2002). The mere fact that the particular Plan at issue was subsequently terminated does not detract from RHI's incentives to adjudicate claims fairly.

*C.     Reviewing the Administrator's Decision*

Accordingly, we will apply a moderately heightened arbitrary and capricious review to the Administrator's decision. See, e.g., Kosiba, 2003 WL 2029942, at *8. Under this standard of review, "a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan. A court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Orvosh, 222 F.3d at 129 (internal quotations omitted). Furthermore, "[w]hether a claim decision is arbitrary and capricious requires a determination 'whether there was a reasonable basis for [the administrator's] decision, based upon the facts as known by the administrator at the time the decision was made.'" Levinson v. Reliance Std. Life Ins. Co., 245 F.3d 1321,

1326 (11th Cir. 2001) (quoting Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d

1137, 1139 (11th Cir. 1989)). Any deference we afford this decision must be

appropriately tempered due to RHI's conflict of interest. See supra Part II.B.

In this case, there is ample evidence in the record to support the Administrator's

decision. The dispute appears to revolve around whether there was a material and

adverse change in Bader's duties, responsibilities, or status with the company to

constitute "Good Reason" for his resignation.[4] As noted in the Magistrate's Report, there

is no evidence in the record which indicates that Bader "was at any time unable to or

prevented from continuing with his prior responsibilities" due to RHI's acquisition of his

former employer.

Prior to RHI's acquisition of Harbison-Walker, Bader was employed by Harbison-

Walker as Director, Worldwide Minerals Processing. Following the acquisition, RHI

offered Bader a position with the succeeding company as Director, Worldwide Cement.

Bader acknowledged that the position he was being offered was "the same position as he

---

[4]    Under the terms of Section 1.11 of the Plan, an employee who voluntarily
terminates employment for "Good Reason" may qualify for benefits. Following a change
in control, such as the acquisition of Harbison-Walker by RHI, an employee may
voluntarily resign a position for "Good Reason," under § 1.11(d), if they are subjected to:
> [A]ny change in duties, responsibilities (including direct reporting
> responsibilities) or status of the Eligible Employee that is inconsistent in any
> material and adverse respect with the Employee's position(s), duties,
> responsibilities or status with the Company immediately prior to such Change
> in Control (including any material and adverse diminution of such duties or
> responsibilities).

App. at 17a.

7

held at Harbison-Walker."[5] Bader presented no evidence, other than his personal perceptions and conjectures, of material and adverse changes to his job responsibilities following the RHI acquisition. In reviewing the record, the only adverse change to Bader's job responsibilities was that, during the post-acquisition reorganization, Bader "unilaterally decided to stop performing his duties." The Administrator, in reviewing the record before them, had sufficient evidence to justify a conclusion that Bader's voluntary resignation was not for "Good Reason," as defined in the Plan, and to deny Bader's application for enhanced severance benefits.

### III.

For these reasons, we conclude that the District Court properly granted summary judgment in favor of RHI. Accordingly, we will AFFIRM the Order of the District Court.

---

[5] The position of Director of Worldwide Cement, by its terms, offered the same salary, reporting structure, and continued in the same product line as Bader's previous position with Harbison-Walker. The language of the job proposal also expressly stated that the new position would "be consistent with [Bader's] current responsibilities."